IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD L. WOODRING,                                6:12-CV-00585-RE

       Plaintiff,                                OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

       Defendant.

REDDEN, Judge.

    Plaintiff Donald Woodring seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.

1 - OPINION AND ORDER

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the calculation and payment of benefits pursuant to Sentence Four, 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for SSI and DIB on May 8, 2009, and alleged a disability onset date of August 7, 1997, which he later amended to August 28, 2008. Tr. 56-57, 1165-67. The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on November 16, 2010. Tr. 9.

The ALJ issued a decision on January 7, 2011, in which he found Plaintiff was not disabled because although he could not perform his past relevant work as a logger, he could perform other work existing in significant numbers in the national economy as a box filler of small products, box labeler/marker, and inspector of box sealing. Tr. 17-18. That decision became the final decision of the Commissioner on February 3, 2012, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

2 - OPINION AND ORDER

Plaintiff was born in 1964, and was 46 years old at the time of the ALJ's decision  Tr. 165.  Plaintiff has a high school education and past relevant work experience as a logger.  Tr. 59, 77-78.

Plaintiff alleges disability due to back, leg, knee, and shoulder pain, and mental illness.  Tr. 213, 255.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,*

3 - OPINION AND ORDER

682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date.

4 - OPINION AND ORDER

At Step Two the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, status-post fusion; degenerative disc disease of the lumbar spine; depressive disorder NOS; anxiety disorder NOS; panic disorder without agoraphobia; and alcohol dependence in remission. Tr. 11-12.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff had the RFC to perform a reduced range of light work, with additional postural, manipulative, environmental, and mental limitations. Tr. 13-16.

At Step Four the ALJ concluded Plaintiff was not able to perform his past relevant work as a logger. Tr. 16-18.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy. Tr. 17.

## DISCUSSION

Plaintiff contends the ALJ erred (1) at Step Two when he failed to find severe impairments of the right knee; (2) at Step Three when he improperly found Plaintiff's impairments did not equal any Listing; (3) when he found Plaintiff less than fully credible; (4) when he improperly rejected the opinion of

5 - OPINION AND ORDER

examining and treating physicians; and (5) in formulating a hypothetical question to the Vocational Expert. Because the ALJ erred in assessing the medical evidence, the court need not address the remaining arguments.

## I. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an

6 - OPINION AND ORDER

nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A. Jeffrey K. Bert, M.D.**

Dr. Bert was Plaintiff's treating physician from 1999 to at least December 1, 2010. Dr. Bert noted Plaintiff had been severely injured in a logging accident in 1997. A June 27, 2008, MRI of the cervical spine showed asymmetric uncovertebal change on the left side at C6-7 with moderate to severe foraminal narrowing. Dr. Bert diagnosed significant degeneration and foraminal stenosis. Tr. 319. In May 2009, Dr. Bert noted Plaintiff was "deteriorating neurologically," with progressive numbness in the left arm. Tr. 321. A May 2009 MRI showed degenerative changes of the cervical spine at C6-7 resulting in mild central canal narrowing and severe left foraminal narrowing. Tr. 322. In October 2009 Plaintiff had neck surgery. On January 20, 2009, Dr. Bert noted Plaintiff was doing "quite well. He has excellent range of motion of his neck. He flexes 30, extends 20 and rotates right and left about 25." Tr. 437. A normal range of cervical motion is approximately 80-90 degrees of flexion, 70 degrees of extension , and rotation left and right of up to 90

7 - OPINION AND ORDER

Plaintiff's impairments were likely to result in good and bad days, and that Plaintiff would be likely to miss about four days of work each month. Tr. 483.

The ALJ rejected Dr. Bert's opinion:

> I do not fully accept Dr. Bert's opinion because it is not supported by his own chart notes. Treatment notes from Dr. Bert reflect that the claimant's lumbar condition is not indicated for surgery and that the claimant has refused more conservative treatment. [citations omitted.] Additionally, Dr. Bert's notes show that the claimant's knee impairment is expected to medically improve within 12 months to the degree it will result in no more than minimal limitation to the claimant's ability to perform work activity, it is not considered a "severe" impairment for purposes of this decision. Moreover, Dr. Bert's chart notes reflect that despite the claimant's ongoing complaints, his knee is stable and has good range of motion. [citation omitted.]

Tr. 15.

The ALJ's reference to Plaintiff's refusing conservative treatment is inaccurate. The ALJ is referring to a chart note from Michael Pylman, M.D. Tr. 477. Dr. Pylman offered an epidural injection for lumbar pain "but at this juncture his insurance is not paying for them and he does not want one of those." *Id.* Contrary to the ALJ's assertion, Dr. Bert's chart notes do not include the opinion that Plaintiff's knee impairment was expected to improve within 12 months. That opinion came from the non-examining medical expert at the hearing. Dr. Bert's chart notes may reflect "successful" neck fusion surgery, but that is not inconsistent with Dr. Bert's opinion that limitations

9 - OPINION AND ORDER

after the neck surgery would continue to limit Plaintiff's ability to perform work activity. Tr. 480-90.

The ALJ did not identify clear and convincing or specific and legitimate reasons to discredit Dr. Bret.

**B.   James B. Powell, Psy. D.**

Dr. Powell conducted a psychological evaluation of Plaintiff on November 13, 2009. Tr. 370-77. Plaintiff reported a history of PTSD and anxiety attacks which trigger asthma attacks, as well as depression because he cannot work as a logger. Plaintiff reported sleep problems since his August 1997 logging accident, in which he was hit in the head by a log and thrown 50 feet, sustained severe brain trauma, and required multiple surgeries.

Prior to his October 2009 cervical surgery, Plaintiff did his own laundry and cleaned up after the dog. He did not like being around other people.

Dr. Powell's diagnostic impression was panic disorder without agoraphobia, anxiety disorder NOS, depressive disorder NOS, and he assessed a GAF of 49. Tr. 375. Dr. Powell found Plaintiff had a moderate level of impairment with regard to socialization, and at least a mild impairment in concentration, persistence, and pace. Tr. 376. Dr. Powell found a marked impairment in his ability to maintain activities of daily living, noting the recent neck surgery.

Dr. Powell stated that, considering Woodring's physical and

10 - OPINION AND ORDER

psychological conditions:

> it is my opinion that it would likely take at least a period of 12 months before Mr. Woodring would be able to maintain employment. It is also likely that given there is further instability with regard to his physical condition, that there would have to be some type of retraining involved as he may be unable to perform the type of physical work that he has done in the past. The prognosis for him being able to maintain employment in the future is considered guarded at this time in light of his current condition that has been described, along with the type of physical work activity that he has only known in the past.

Tr. 376.

The ALJ rejected Dr. Powell's opinion:

> Dr. Powell found that the claimant had marked impairment in activities of daily living; however, because this was based primarily on the claimant's physical condition at the time, and in light of the claimant's ongoing improvement following surgery, this assessment is not adopted. I note that Dr. Powell did not perform a physical examination and is not a licensed medical physician. Dr. Powell did not indicate the claimant was any more than mildly impaired in his mental ability to attend to daily activities.

Tr. 16.

The ALJ failed to articulate specific and legitimate or clear and convincing reasons to reject Dr. Powell's opinion. Dr. Powell was clearly aware of plaintiff's recent surgery when he made his assessment. He diagnosed multiple severe mental impairments and assigned a GAF score of 49. The GAF scale is a tool for "reporting the clinician's judgment of the individual's

11 - OPINION AND ORDER

overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

/ / /

/ / /

/ / /

12 - OPINION AND ORDER

overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

/ / /

/ / /

/ / /

12 - OPINION AND ORDER

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred in rejecting the opinions of Dr. Bert and Dr. Powell. If credited, those opinions establish that Plaintiff is disabled. Accordingly, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman*, 211 F.3d at 117.

/ / /

/ / /

13 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this /8 day of December, 2013.

JAMES A. REDDEN
United States District Judge

14 - OPINION AND ORDER